**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**ANNETTE GAY CLEVELAND**                                                **PLAINTIFF**

**v.**                                        **CIVIL ACTION NO.: 1:10CV307-SA-SAA**

**MUELLER COPPER TUBE COMPANY, INC.**                                **DEFENDANT**

## MEMORANDUM OPINION

Plaintiff Annette Cleveland filed this suit against Defendant Mueller Copper Tube Company, Inc., asserting claims under the American's with Disabilities Act (ADA) and Family and Medical Leave Act (FMLA). Mueller has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 as to all claims. For the following reasons, the Court finds the motion to be well taken.

### FACTUAL AND PROCEDURAL BACKGROUND

Cleveland began working at Mueller's Fulton, Mississippi, copper tubing plant in 1996. Over the years, Cleveland worked in a variety of positions within the plant. In 2003, Cleveland injured her back in a lift truck accident. On July 1, 2005, Cleveland's doctor concluded she had reached maximum medical improvement (MMI) and assigned her a permanent work restriction due to her injuries. Specifically, her doctor stated she had a "permanent impairment of 2% to the body as a whole for degenerative spine level and facet arthropathy. She is limited to only occasionally performing repetitive twisting movements. She has a 40 pound lifting limit. These will both be permanent restrictions." At this time, Cleveland was working as an "ACR helper."[1] Cleveland testified she had no problem performing her job as an ACR helper despite her restrictions.

Shortly after Cleveland received her permanent restrictions, Mueller had a reduction-in-force. Mueller is a unionized company and its workers enjoy a collective bargaining agreement

---

[1] It is unclear from the record what exactly this position entailed.

(CBA). Pursuant to the CBA, seniority is the first criteria to consider in cases involving layoff, recall or promotion. Furthermore, an employee who would otherwise be laid off is entitled to "bump" less senior employees. Laid-off employees are entitled to recall by seniority into available positions. Based on her seniority, Cleveland was first reassigned to a "lift truck position," and then to the position of "five-tier-operator." The position of five-tier-operator, which was classified as a "light work" position, entailed operating a control panel that controlled a conveyor system that moved storage bins containing coiled copper tube to different parts of the facility.

In September of 2009, Cleveland injured her ankle on the factory floor and was off work on workers compensation / FMLA leave from approximately September 28, 2009 through December 3, 2009. While Cleveland was out on leave, Mueller had another reduction-in-force which completely eliminated the shift that Cleveland worked on. Everyone working the shift was laid off, or reassigned if they had enough seniority to bump another employee. In total, fifty-six employees were laid off.

After Cleveland learned of the impending layoff, she put in a bid for a block-crane operator position. The block-crane operator uses an overhead crane to move copper tubing from one machine to another or to a staging area for shipping. Mueller classifies the position of block-crane operator as a "medium work" position. "Medium work" entails "[e]xerting 20 to 50 pounds of force occcassionally, and/or 10 to 25 pounds of force frequently, and/or greater than negligible up to 10 pounds of force constantly to move objects."

When Cleveland returned to work on December 3, 2009, she was informed by her union representative, Vincent Whitfield, that Mueller would not allow her to bid on the block-crane position because of her restrictions. Plaintiff then spoke with Tammy Webb, the Human Resources

2

Manager, and Mike Simmerman, the Plant Manager. During this meeting, Simmerman and Webb told Cleveland that it did not appear her restrictions would allow her to perform the block-crane operator position. Webb and Simmerman asked Cleveland to return to her doctor to have her restrictions reevaluated or take a functional capacity exam (FCE). However, Cleveland did not want to return to the doctor who had placed her on permanent restrictions because "he told me the only way he could treat me was with narcotic drugs," and Cleveland had previously been "hooked on them" back in 2005. Webb and Simmerman gave her the name of a different doctor who could perform the FCE. However, after the meeting, Cleveland never saw a doctor or underwent an FCE. When asked why she didn't have her restrictions re-evaluated, Cleveland responded "I didn't think I needed to." According to Cleveland:

> I didn't know why they wouldn't let me have that crane when I knew I could do it and that – there's not a job in that mill that I can't do once I set my mind to it. There are jobs in there that I know would hurt me if I tried. And I've got enough common sense to know I'm not going to do it. I couldn't do a break-out job now because there is too much heavier work involved in it. As far as pushing and pulling on heavy tubing, I couldn't do it. I know I couldn't do it. So therefore, I'm not going to bid something that I know I can't do. I'm not going to do anything to myself inside that mill that is going to hurt me.

Cleveland was not awarded the block-crane operator position and was laid off on December 7, 2009. She received a letter from Mueller stating, in pertinent part:

> [D]ue to the recent lay off and the permanent restrictions you continue to have and have had due to your back injury dated July 1, 2005, we will be unable to accommodate the requirements of your permanent restrictions. The jobs that your seniority qualifies you for, as defined by the lay off procedures of the contract, are identified as medium type work.
>
> We believe that the jobs listed as medium type work, as indicated in the Work Risk Analysis dated March, 2005, would put you at risk of further personal injury by not following your permanent restrictions.

3

On January 28, 2010, Cleveland filed a charge of discrimination with the EEOC asserting discrimination in violation of the ADA. The charge of discrimination alleges "Effective December 7, 2009, I was laid off. I was advised by the Human Resources Manager, Tammy Webb, that the company was laying me off because they were unable to accommodate the requirements of my permanent restrictions. My bid for a position that met the requirements of my restrictions was denied. . . ."

In late July or early August 2010, Mueller had another opening for a block-crane operator position. Cleveland inquired about bidding on the position, and was informed by the union that the only way she would receive the position would be to undergo an FCE. Cleveland finally agreed to undergo the FCE. Cleveland was evaluated on August 3, 2010 and August 31, 2010 by physical therapist Chan Brown. As part of his evaluation, Brown conducted a job site analysis during which he spent three hours observing Cleveland performing the duties of the block-crane operator.

According to Brown's analysis, "[t]he job requirement of block crane operator requires patient to be able to pull the boom, which was measured on four different occasions, with the first pull at 45 pounds, second at 100 pounds, third at 80 pounds, and fourth at 80 pounds. To clarify, this means 76 force pounds was utilized to break the friction on the boom. Pushing of the boom was measured three times at 80 pounds, 90 pounds, and 90 pounds. To clarify, this means 90 pounds of force was utilized to break friction for boom to return to normal position. Max pulling of straps around tubing bundles was measured at 200 force pounds during the job site analysis. According to patient's permanent restrictions of 40 pounds, as determined by Dr. Cicala, patient will be unable to perform this job secondary to the force pounds required to push the boom and pull the boom out as well as pulling on the straps." However, Brown concluded that, based on his testing, Cleveland

4

"was able to perform all job-related activities safely with no deviations" and "should be able to return to return to work as a block crane operator working full duty." Mueller returned Cleveland to work as a block-crane operator on September 27, 2010.

Cleveland filed the instant suit on November 23, 2010, alleging that she had been discriminated against in violation of the ADA and the FMLA. Discovery has been completed, and Defendant Mueller now moves the Court, pursuant to Federal Rule of Civil Procedure 56, for summary judgment as to all of Plaintiff's claims.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a

5

genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The Court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 164.

## DISCUSSION

**Disability Discrimination**

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112. Initially, the Court notes that both parties have briefed this case as a circumstantial evidence case utilizing the McDonnell-Douglas framework rather than as a direct evidence case. However, Mueller's lay off notice states that "we will be unable to accommodate the requirements of your permanent restrictions" and "We believe that the jobs listed as medium type work, as indicated in the Work Risk Analysis dated March, 2005, would put you at risk of further personal injury by not following your permanent restrictions." Because there is direct evidence in the record that Mueller made an employment decision because of Cleveland's perceived disability (as discussed below), it is not necessary to apply the mechanical formula of the McDonnell-Douglas test and its burden shifting framework. See Rizzo v. Children's World Learning Centers, Inc., 84 F.3d 758, 762 (5th Cir. 1996). To prevail on her ADA claim, Cleveland must establish that (1) she is disabled within the meaning of the ADA; (2) she is qualified for the position in which she sought employment; and (3) she was discriminated against because of her

6

disability. Jenkins v. Cleco Power LLC, 487 F.3d 309, 315 (5th Cir. 2007).

I.	Disabled

Mueller first argues that Cleveland cannot show she is disabled within the meaning of the ADA. A plaintiff may establish that she is "disabled" within the meaning of the ADA by demonstrating "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Here, Cleveland does not allege that she actually has a disability which substantially limits a major life activity as defined by section 12102(1)(A), but argues instead that Mueller "regarded her as having such impairment" under Section 12102(1)(C).

The ADA's definition of "disability" was substantially broadened by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"), effective January 1, 2009. "The primary purpose of the ADAAA is to make it easier for people with disabilities to obtain protection under the ADA." 29 C.F.R. § 1630.1 (2011). For "regarded as" claims, an individual is no longer required to demonstrate that the disability she is regarded as having is an actual qualified disability under the ADA or that it substantially limits a major life activity. See 42 U.S.C. §§ 12102(1)(C), (3). Under the ADAAA, "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment *whether or not the impairment limits or is perceived to limit a major life activity.*" Id. (emphasis added).

The Court finds that, assuming Cleveland can otherwise show that Mueller's failure to place her in the block crane position was a "prohibited action," there is sufficient evidence in the record from which a reasonable juror could conclude that Cleveland was "regarded as" having a disability,

7

as defined by the ADAAA.

II.     Qualified Individual

A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The term "essential functions" means the fundamental duties of the employment position the individual with a disability desires, but does not include the marginal functions of the position. 29 C.F.R. § 1630.2 (2011). Here, Mueller has produced competent summary judgment evidence in the form of a work-risk analysis prepared in 2005, and the job site analysis performed in 2010, that pushing and pulling the extension boom on the crane, and pulling the straps that secure the copper tubing to the crane, are essential functions of the crane-block operator position and fall outside Cleveland's permanent medical restrictions. Cleveland fails to dispute or otherwise raise a genuine dispute of material fact regarding this issue.

To avoid summary judgment on whether she is a qualified individual, a plaintiff must show (1) that she could perform the essential functions of her job in spite of her disability, or (2) that a reasonable accommodation of her disability would have enabled her to perform the essential functions of her job. Turco v. Hoechst Celanese Corp., 101 F.3d 1090, 1093 (5th Cir. 1996).[2] "The determination of whether an individual with a disability is qualified is to be made at the time of the employment decision. This determination should be based on the capabilities of the individual with a disability at the time of the employment decision." 29 C.F.R. Pt. 1630, App. § 1630.2(m) (2011)

---

[2] Here, the second prong of Turco is inapplicable because Cleveland does not argue that she required an accommodation, or direct the Court to any evidence showing what accommodations Mueller could implement which would allow her to perform the block-crane operator position with her forty pound lifting restriction.

8

(Interpretive Guidance of Title I of the American's with Disabilities Act).

Mueller asserts that Cleveland was not offered the block-crane operator position because Cleveland's refusal to obtain a medical certification prevented Mueller from determining whether she could safely perform the job. The ADA allows employers to require employees to undergo medical examinations if they are: (1) job related, and (2) consistent with business necessity. 29 U.S.C. § 1211(d)(4)(A); see also Fuzy v. S&B Eng'r & Constructors, Ltd., 332 F.3d 301, 303 (5th Cir. 2003). "Courts have . . . found these criteria met when the examination or inquiry are triggered by concerns over whether an employee's own mental physical health threatens their ability to perform their job safely for themselves or others." Parker v. Pulte Homes of Tex., L.P., 2011 WL 767182, at *9 (S.D. Tex. February 25, 2011) (collecting cases). Mueller has produced competent summary judgment evidence that the requested FCE was both job related and consistent with business necessity, in that Cleveland's permanent medical restrictions facially conflicted with the requirements of the block-crane operator position. See Porter v. U.S. Alumoweld Co., 125 F.3d 243, 246 (4th Cir. 1997) ("Facts that [Plaintiff's] job required lifting and pulling, and that he had encountered problems carrying out his job due to back problems even before surgery, indicate that the requested [FCE] was indeed job-related and necessary to determine if he could carry out his duties."). Cleveland fails to directly respond to this argument.

Plaintiff first argues³ that "she would not have bid on the block crane operator job if she had

---

³These arguments are taken from the portions of Plaintiff's response devoted to establishing whether Cleveland was regarded as disabled and whether Mueller's stated reason for her layoff (her failure to take the FCE or obtain medical certification) was pretextual. Plaintiff fails to specifically argue what the Court finds is the dispositive issue in this case—that is, whether Cleveland can establish she was qualified for the block-crane operator job at the time of the adverse employment action in spite of her medical restrictions and refusal take the requested FCE.

9

been unable to do the job." However, Plaintiff cites no authority for the proposition that an employer must defer to an employee's subjective judgment that she could safely perform a job it had classified as falling outside her permanent medical restrictions. See Alexander v. Northland Inn, 321 F.3d 723, 727 (8th Cir. 2003) ("The ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden," and "the employee's belief or opinion that she can do the function is simply irrelevant."); Cf. Young v. United Parcel Service, Inc., 2011 WL 3510997, at *3 (D. Md. Aug. 9, 2011) ("There is no case supporting the notion that an employer must question a medical provider's judgment and independently divine whether an employee is truly able to work.").

Testimony cited by Plaintiff from Vincent Whitfield, the union grievance chairman, is similarly unavailing. Whitfield testified as follows:

> Q: Did they tell you why they denied her the job?
> A: Yes.
> Q: What did they say?
> A: Based it on the accommodation of her restrictions.
> Q: And did you believe it was the real reason?
> . . .
> A: No, I do not.
> Q: Why not?
> A: Because her restriction, what I read of her restriction and what the crane exists of was probably two different – I didn't see where her restriction interfered with the crane operator, her doing that position.
> Q: So you believed with her restrictions she could do that job?
> A: Yes

This testimony lacks foundation,[4] is entirely conclusional, and fails to raise a fact issue regarding Cleveland's ability to perform the essential functions of the block-crane operator position with her

---

[4] There is no evidence in the record regarding Whitfield's basis or qualifications for this determination.

restrictions.

Cleveland also alleges that in January 2010, she sought a position as a bench-crane operator, another medium-duty position, but the job was given to Troy Underwood, an employee with less seniority who had allegedly just returned to work with permanent lifting restriction of 8-15 pounds. Plaintiff has not produced any documentation or a declaration from Underwood to support this contention. Instead, Plaintiff relies on her deposition testimony and that of Vincent Whitfield. Plaintiff asserts in her deposition that Underwood told her he was under a five pound lifting restriction. However, "This— the statement of another offered for the truth of the matter asserted, constitutes hearsay—Deposition hearsay is not competent summary judgment evidence." Timberlake v. Teamsters Local Union No. 891, 428 F. App'x 299, 301 (5th Cir. 2001) (citing FED. R. EVID. 801).

Whitfield testified that he had in the past examined Underwood's medical records, and "I don't know exactly what his weight limit was, but I know his restriction was – it had something to do with his picking or lifting or pulling. I know that for sure . . . I want to say – I want to say it's anywhere from eight to fifteen pounds. That's what I want to say it is." Whitfield also stated he was not positive what Underwood's restrictions were and "[he] would have to look in his files to see." In response, Mueller has submitted a declaration from Michael Baum, the plant manager, who avers that the medical file for Troy Underwood contains no work restrictions, although in March of 2005 he was restricted to only performing "medium-duty" work. However, Baum states that at no time was Underwood ever placed in a position exceeding his restrictions. Even viewing this testimony in the light most favorable to Cleveland, Whitfield's recollection of Underwood's restrictions is insufficient to whether to raise a genuine issue of material fact as to Cleveland's qualifications for
11

the block-crane operator position.

Cleveland also argues that "Mueller had allowed Cleveland to work as a crane operator and block line lift truck [sic] between 2005 and 2009, even though these were medium classification jobs." However, the deposition testimony cited actually contradicts this contention.

Cleveland also points out numerous other allegedly disabled employees who were accomodated by Mueller. Cleveland argues that "Mueller had made accommodations for numerous other employees who had far greater restrictions than Cleveland." However, these employees had dissimilar impairments from Cleveland and worked in dissimilar positions. The Court fails to see how evidence that Mueller accommodated other disabled employees is evidence that it discriminated against Cleveland due to her disability.

Cleveland also implies in her brief that Mueller should have placed her in other positions, such as a maintenance job Mueller allegedly "created" to accomodate Mike Graham, another disabled employee. However, an employer is not required to create a new job to accommodate. Foreman v. Babcock & Wilson Co., 117 F.3d 800, 809 (5th Cir. 1997). Cleveland also implies she should have been given a five-tier operator job which became open sometime in 2010, but was awarded to a less senior employee. The record is devoid of any other details surrounding these positions, or any evidence that Cleveland applied for them. Cleveland admits she was unable to bid on any other jobs while laid off, because a laid off employee has no bidding rights under the CBA. Furthermore, to the extent Cleveland is asserting that Mueller's failure to place her in these positions constitute adverse employment actions in violation of the ADA, they are not mentioned in Cleveland's complaint or charge of discrimination filed with the EEOC.

The undisputed facts in this case show that Mueller had an objectively reasonable medical

basis for asking Cleveland to perform the FCE before placing her in a position with lifting requirements which violated her permanent restrictions. The record supports Mueller's argument that the FCE was both job-related and consistent with business necessity. Cleveland has not presented the Court with any authority holding that the ADA requires an employer to disregard an employee's permanent medical restrictions. Because Cleveland has failed to direct the Court to more than a mere scintilla of evidence to show that she was qualified for the position in light of her permanent medical restrictions, and refusal to undertake an FCE, she has failed to establish a genuine issue of material fact and Mueller is entitled to summary judgment as to Cleveland's ADA claim.

III.     Direct Threat

Alternatively, the Court finds that Mueller is entitled to summary judgment because it has presented un-refuted evidence that, based on the information available to it at the time, placing Cleveland in the block-crane operator position would have constituted a direct threat to her safety.[5] Section 12113 of the ADA permits qualification standards which are "job-related and consistent with business necessity" that "include a requirement that an individual shall not pose a direct threat to the health or safety of other individuals in the workplace." 42 U.S.C. § 12113(a),(b); Turco, 101 F.3d at 1094. "Direct threat means a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation." 29

---

[5] The Fifth Circuit has noted that it is unclear which party bears the burden of proof regarding whether an employee's disability poses a direct threat in performing her essential job duties. See Rizzo v. Children's World Learning Ctrs., Inc., 213 F.3d 209, 213 n.4 (5th Cir. 2000) (Rizzo II) ("It is unclear from the statutory scheme who has the burden on this issue. It may depend on the facts of the particular case."). The Court believes, as discussed in Chief Judge Jones' extensive dissent in Rizzo II, that the burden is properly on the employee. See id. at 215-23 (Jones, J. dissenting). However, even if the burden is on the Defendant, the Court finds that Mueller has satisfied its burden.

C.F.R. § 1630.2 (2011). This determination should be based on an "individualized assessment of the individual's present ability to safely perform the essential functions of the job" and "reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence." Id.

Here, Mueller argues it attempted to undertake an "individualized assessment" of Cleveland's ability to safely perform the block-crane operator position by requesting that she perform an FCE, but Plaintiff refused to participate. When an employee requests an accommodation because of a disability, the ADA envisions an "informal, interactive process" between the employer and the employee to attempt to craft a reasonable accommodation. See Loulseged v. Akzo Nobel, Inc., 178 F.3d 731, 735-36 (5th Cir. 1999). "The need for bilateral discussion arises because each party holds information the other party does not have or cannot easily obtain." Id. Although in this case Cleveland claims she did not require an accommodation, the Court finds that the principles behind the interactive process apply here. Mueller possessed objective medical evidence that called into doubt Plaintiff's ability to safely perform the block-crane operator position. However, Cleveland refused to assist Mueller in ascertaining whether or not she could safely perform the job with her medical restrictions. The risk of allowing an employee, who has been given a permanent lifting restriction due to a previous back injury, to work in a position which requires lifting in excess of that restriction—without first obtaining some sort of objective evidence that it is safe to do so— presents "a high probability of substantial harm to the individual . . . based on valid medical . . . or on other objective evidence." 29 C.F.R. Pt. 1630, App. § 1630.2(r) (2011) (Interpretive Guidance of Title I of the American's with Disabilities Act). Cleveland fails to respond to Mueller's contention that placing her in the block crane-operator

position without first obtaining medical certification or completing an FCE would have constituted a direct threat to her safety. Accordingly, because Mueller had an objectively reasonable concern that placing Cleveland in the block-crane operator position would have constituted a direct threat to her safety, and Cleveland frustrated Mueller's attempt to obtain additional information by refusing to take an FCE, summary judgment is appropriate.

**FMLA Retaliation**

Plaintiff also asserts that Mueller retaliated against her for taking FMLA leave. The Fifth Circuit applies the McDonnell-Douglas framework to analyze retaliation claims under the FMLA. Hunt v. Rapides Healthcare Sys., LLC, 277 F.3d 757, 768 (5th Cir. 2001). To make a prima facie showing of retaliation under the FMLA, Plaintiff must show that: (1) she was protected under the FMLA; (2) she suffered an adverse employment decision; and either (3) that she was treated less favorably than an employee who had not requested leave under the FMLA, or the adverse decision was made because she took FMLA leave. Id. If a plaintiff succeeds in making a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory or non-retaliatory reason for the employment action. Id. Once the defendant does so, the plaintiff must prove by a preponderance of the evidence that the defendant's reason is a pretext for retaliation, or that retaliation was a motivating factor. Id.; Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004); Harvilel v. Texas A & M Univ., — F. Supp. 2d —, 2011 WL 2295279 (S.D. Tex. 2011) (applying mixed-motives framework in FMLA retaliation case).

I. Prima Facie Case

Here, Mueller fails to dispute that the Cleveland has satisfied the first or second elements of her prima facie case. Regarding the third element, Cleveland relies on the temporal proximity

15

between her FMLA leave and her layoff as evidence of a causal link between the two. See e.g. Swanson v. Gen. Servs. Admin., 110 F.3d 1180, 1188 (5th Cir. 1997) ("Close timing between an employee's protected activity and an adverse action against him may provide the 'causal connection' required to make out a *prima facie* case of retaliation."). Here, Cleveland was laid off only a few days after returning from FMLA leave. The Court finds this is sufficient to establish a prima facie case. A prima facie case having been established, the burden shifts to Mueller to articulate a legitimate, non-retaliatory reason for the adverse employment action.

II. Legitmate, Non-Retaliatory Reason

Mueller asserts that Cleveland did not receive the block-crane operator position because she failed to undergo an FCE or obtain a doctor's certification that she could perform the job without violating her medical restrictions. The Court finds this to constitute a valid, non-retaliatory reason.

III. Pretext / Mixed-Motives

Mueller having articulated a non-retaliatory reason for the adverse employment action, the burden shifts back to Cleveland to offer evidence which would allow a reasonable jury to conclude that Mueller's stated reason is either a pretext for FMLA retaliation, or that retaliation for exercising her rights under the FMLA was a motivating factor for the decision. In an attempt to do so, Cleveland offers arguments identical to those advanced in support of her ADA claim. For substantially the same reasons that the Court finds these arguments fail to demonstrate that Cleveland was a qualified individual for the block-crane operator position, the Court finds these arguments fail to show that Mueller's reason for not awarding her the position was a pretext for FMLA retaliation, or that FMLA retaliation was a motivating factor in the decision. The Court additionally notes that Troy Underwood, one of Plaintiff's putative comparators, was himself

16

returning from FMLA leave when he was offered the bench-crane operator position in January 2010. After reviewing the entire record, the Court finds that Plaintiff has failed to provide any evidence from which a reasonable juror could conclude that her taking FMLA leave, rather than her refusal to obtain medical certification or undergo an FCE, was the reason for her failure to obtain the block-crane operator position and subsequent layoff. Therefore, Mueller is entitled to summary judgment on this issue.

## CONCLUSION

Defendant's motion for summary judgment is GRANTED, Plaintiff's claims are DISMISSED, and this case is CLOSED. Pursuant to Rule 58, a separate judgment shall issue in accordance with this opinion.

SO ORDERED on this, the 10th day of April, 2012.

/s/ Sharion Aycock
**UNITED STATES DISTRICT JUDGE**
